[Cite as *State v. McDonald*, 2018-Ohio-484.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No.   105276

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAMIL H. MCDONALD

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-602642-A

**BEFORE:**   Boyle, J., McCormack, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**   February 8, 2018

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, Suite 613
Cleveland, Ohio 44118


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Erin Stone
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Jamil McDonald ("McDonald"), appeals his convictions. He raises two assignments of error for our review:

1. The case lacked sufficient evidence.

2. It was error not to merge the counts.

{¶2} Finding merit in part to his second assignment of error, we reverse in part and remand for resentencing in order for the state to elect which allied offense to pursue for purposes of sentencing.

**I. Procedural History and Factual Background**

{¶3} In January 2016, McDonald and his brother, Johnathan McDonald ("Johnathan"), were indicted in the same case on six counts. McDonald was indicted on five of them: one count of drug trafficking (heroin) in violation of R.C. 2925.03(A)(2), a third-degree felony; two counts of drug possession in violation of R.C. 2925.11(A), a third-degree felony (heroin) and a fifth-degree felony (alpha-PVP); possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony because it contained a furthermore clause that McDonald intended to use the tools to commit a felony; and one count of having a weapon while under disability in violation of R.C. 2923.13(A)(3), a third-degree felony. The trafficking and third-degree possession counts carried one-year firearm specifications, and all of the counts carried one or more forfeiture specifications for various items, including a gun, six cell phones, two tablets, four digital scales, money ($379), three hydraulic presses, and packaging material. McDonald and his brother

entered pleas of not guilty to all charges and were tried together before a jury, where the following evidence was presented.

{¶4} Michael Griffis, a detective for the Solon Police Department, testified that he is currently assigned to the Southeast Area Law Enforcement Narcotics Task Force ("SEALE"). Detective Griffis explained that SEALE is a "multi-jurisdictional drug task force" covering seven cities in the southeast portion of Cuyahoga County. Detective Griffis had been a police officer for approximately 12 years and had been assigned to the SEALE task force for almost five years.

{¶5} Detective Griffis testified that in July 2015, he received a phone call from the commander of the Westshore Enforcement Bureau ("WEB"), which is "another multi-jurisdictional drug task force" similar to SEALE, but on the "west side." Detective Griffis received information from the WEB commander that McDonald was trafficking heroin out of his home in Maple Heights. Detective Griffis explained that after receiving that information, he began the process of corroborating the information.

{¶6} Detective Griffis ran McDonald's name and address in the police department's computer system to find out if McDonald lived at the address, which he did. Detective Griffis and his partner, Detective Mark Witkiewicz, then began "periodic surveillance" of the home. Detective Griffis stated that while surveying McDonald's home, they saw him leaving his house in a rental car, which corroborated the information he received from the WEB commander. Detective Griffis explained that the "vast majority" of drug traffickers use rental cars for two reasons: to avoid being detected by

police and to avoid forfeiture laws.

{¶7} Detective Griffis testified that on September 24, 2015, he "executed a trash pull" at McDonald's house. He explained that a "trash pull" means collecting someone's trash to look for "illegal activity." In this case, he was searching for "signs of drug trafficking." Detective Griffis found mail in the trash addressed to McDonald, which confirmed he had the right trash. He also found mail addressed to Beverly Bell at the same address.

{¶8} Detective Griffis also found the remains of "six plastic baggies" in McDonald's trash that police call "tear offs." Detective Griffis explained that "tear offs" are the "discarded portions of plastic" bags that drug traffickers throw away after they have packaged the drugs in smaller "street-sale quantities." He said that "tear offs" are "one of the biggest things" they look for "as far as the signs somebody is selling narcotics." The contents of the "trash pull" were shown to the jury, including the six "tear offs."

{¶9} After the "trash pull," Detective Griffis prepared and obtained a search warrant from Garfield Heights Municipal Court to search McDonald's house, which police executed on September 29, 2015. Detectives Griffis and Witkiewicz decided to wait until they saw McDonald leave the residence and then have Officer Kyle French, a Maple Heights police officer, conduct a traffic stop of McDonald, where they would then inform him of the search warrant. Detectives Griffis and Witkiewicz were present when Officer French stopped McDonald in his rental car. Detectives Griffis and Witkiewicz

asked McDonald to exit the vehicle to inform him of the search warrant. Detectives Griffis stated that because McDonald's driver's license was suspended, they conducted an inventory search of the car and towed his vehicle. They found 0.23 grams of "Molly," a "street name" for ecstasy, which is a "substituted cathinone" also known as "MDMA" and "alpha-PVP."

{¶10} McDonald remained with Officer French, and detectives Griffis and Witkiewicz went back to McDonald's house to conduct the search with the help of several other officers from various jurisdictions, including Detective Brian Sara from the Bedford Police Department. The officers "knocked and announced" their presence two or three times when they noticed a male looking out from an upstairs window. At that point, they entered the home. The officers immediately secured the male, who turned out to be McDonald's brother, Johnathan. They placed Johnathan in handcuffs and proceeded to "clear the house" and search it.

{¶11} Detectives Griffis searched the master bedroom. He found a Raven Arms .25 caliber pistol in a box near a night stand. Detectives Griffis also found $55 in the room as well. There were two other bedrooms in the house, but the officers did not find any contraband in them.

{¶12} Detective Sara searched the kitchen of the home. He found a white powdery substance in separate drawers in the kitchen that turned out to be 5.05 grams and 2.4 grams of heroin. He also found several items from the kitchen, including a coffee grinder with "massive amounts" of white powder residue in it, "tear offs," a pie tin with

white powder residue inside, three hydraulic presses, vinyl gloves, a "McDonald's spoon," playing cards (some with the white powder residue on them), sandwich bags, and smaller "baggies." Detective Sara explained that all of these items are commonly used in drug trafficking.

{¶13} Detective Witkiewicz searched the living room and found $56 and four digital scales, as well as six cell phones and two tablets. He stated that there was white powder on "almost every single one of them." Detective Witkiewicz also "bagged" the evidence from the other officers and created the inventory list from the search warrant.

{¶14} Detectives Griffis and Sara testified that heroin can be "cut" with other materials to "stretch" or increase the amount of profits. When people "cut" heroin, they will throw it in a coffee grinder to grind it up with another substance. They will then put the combined substance "into a press," and then "press it back down" into a "rock" so they can sell it. They further explained that playing cards are used in drug trafficking to cut and mix drugs with other agents and to "divvy it out into packages." And they also described another tool used by traffickers, which was a "McDonald's coffee spoon." The spoon is a small spoon that people use to stir cream in coffee. Drug traffickers use the spoon to measure approximately "a half a gram of heroin."

{¶15} Detective Griffis further explained that six cell phones and two tablets were also retrieved from the house, which he said drug traffickers use to make drug deals. Detective Griffis stated that in his experience, it is "normal" to find "larger quantities of electronics" when people are trafficking drugs because they are trying to hide their

identity. He said that he finds multiple electronics "99 percent of the time."

{¶16} A forensic scientist from the Ohio Bureau of Criminal Investigation testified that the substances found in the kitchen contained heroin and the substance found in McDonald's car contained alpha-PVP.

{¶17} At the close of the state's case, McDonald moved for a Crim.R. 29 acquittal that the trial court denied.

{¶18} Tamillya Netters testified for the defense. She said that she has two children; McDonald is the father of one of them. She stated that when police searched the home, she had just recently moved into McDonald's home. She and McDonald shared the upstairs master bedroom, and the two children slept in the other two bedrooms on the second floor of the home. Netters testified that the gun found in the master bedroom was hers, and neither McDonald nor his brother knew about the gun. There was paperwork inside the gun box stating that Netters purchased the gun.

{¶19} Netters further testified that Johnathan only lived with McDonald for a couple of months and only moved in with him because his mother's house burned down. She said that Johnathan slept on a couch in a back room on the first floor that was behind the kitchen. Netters explained that Johnathan had always intended to move back in with his mother when she got a new house.

{¶20} Netters also testified that McDonald had been in an accident at the beginning of July 2015, and his car was totaled. She said that is why he was driving rental cars around at the time of his arrest.

{¶21} The jury found McDonald not guilty of having a weapon while under disability, but guilty of drug trafficking (heroin), both counts of drug possession (heroin and alpha-PVP), and possessing criminal tools. With respect to the one-year firearm specifications, the jury found that McDonald did not have a firearm on or about his person or under his control while committing the offenses. With respect to the forfeiture specifications, the jury found that the cash, cell phones, tablets, and gun were not subject to forfeiture, but that the scales, hydraulic presses, and packing materials were subject to forfeiture. The jury found Johnathan not guilty of all charges.

{¶22} The trial court sentenced McDonald to a total of nine months in prison: nine months for drug trafficking (heroin), nine months for drug possession (heroin), six months for drug possession of alpha-PVP, and six months for possessing criminal tools, all to run concurrent to each other. The trial court further notified McDonald that he would be subject to a discretionary period of three years of postrelease control. It is from this judgment that McDonald appeals.

## II. Sufficiency of the Evidence

{¶23} In his first assignment of error, McDonald argues that his drug trafficking convictions were not supported by sufficient evidence.

{¶24} "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1433 (6th

Ed.1990). When an appellate court reviews a record upon a sufficiency challenge, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶25} McDonald challenges his convictions for drug trafficking and possessing criminal tools. Drug trafficking under R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution[.]" Possessing criminal tools under R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶26} McDonald argues that the state failed to present sufficient evidence that he committed the offenses because (1) there was no evidence that police properly corroborated the anonymous tip and even if the "trash pull" could be considered corroboration, there were no photos to prove the contents of the "trash pull," (2) there was no evidence establishing who the "real dealer" was because other people lived in the house, (3) there was no evidence of how pure the heroin was, (4) police failed to test the various "criminal tools" for DNA or fingerprints, and (5) police failed to obtain cell phone records from the cell phones that were found to determine if McDonald was trafficking drugs. We disagree with all of McDonald's arguments.

{¶27} The state presented evidence that when police received the information that

McDonald was selling heroin out of his house and driving rental cars, they corroborated that information before obtaining a search warrant. First, Detective Griffis testified that drug dealers use rental cars to avoid detection by police and to avoid forfeiture laws. Police surveyed McDonald's house and observed him using two rental cars over a period of almost three months. They conducted a "trash pull" and discovered "tear offs," which both Detectives Griffis and Sara testified are indicative of breaking down larger bags of drugs into "street-size" quantities. Police also found mail belonging to McDonald in the contents of the trash. Although McDonald maintains that there were no photos of the "trash pull" to prove its contents, the actual contents of the trash pull were admitted into evidence.

{¶28} Although there was not direct evidence that McDonald was the "real dealer," there was certainly substantial circumstantial evidence. The heroin and criminal tools were found in the kitchen of the home. Although three adults lived in the home at the time of the search, the state only charged McDonald and his brother. Netters testified that she knew nothing about heroin or any drugs ever being in the home, let alone being sold from the home. Netters further explained that Johnathan had only lived with McDonald for a short time and that it was a temporary situation. This is sufficient evidence for a reasonable factfinder to find that Netters and Jonathan had nothing to do with trafficking heroin and to find McDonald guilty of trafficking beyond a reasonable doubt.

{¶29} Regarding the state not proving the purity of the heroin, it did not have to.

*See State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419 (held that the entire "'compound, mixture, preparation, or substance,' including any fillers that are part of the usable drug, must be considered for the purpose of determining the appropriate penalty for cocaine possession"). Although *Gonzales* dealt with cocaine, it is equally applicable to heroin. The state established through the testimony of a forensic scientist at the Ohio Bureau of Criminal Investigation that the substances found in the kitchen contained heroin. This was sufficient evidence that the substances were heroin. *See id.*

{¶30} McDonald's final two arguments, that his convictions were not supported by sufficient evidence because police failed to test the various "criminal tools" for DNA or fingerprints and failed to obtain cell phone records, are also without merit. Detective Griffis testified that he did not test for fingerprints or DNA or obtain cell phone records because he believed they had enough evidence against McDonald without doing so. We agree.

{¶31} Circumstantial evidence and direct evidence possess the same probative value, and therefore circumstantial evidence, like direct evidence, can support a finding of proof beyond a reasonable doubt if the trier of fact so finds. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). Circumstantial evidence is proof of a fact from which the existence of other facts reasonably may be inferred. *Id.* Moreover, a conviction based solely on circumstantial evidence is no less sound than one based on direct evidence. *State v. Begley*, 12th Dist. Butler No. CA92-05-076, 1992 Ohio App. LEXIS 6457, 6 (Dec. 21, 1992), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 514 N.E.2d

394 (1987). Indeed, a conviction based upon purely circumstantial evidence may be just as reliable as a conviction based on direct evidence, if not more so. *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960), citing *Rogers v. Missouri Pacific RR. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957).

{¶32} In this case, there was substantial circumstantial evidence that McDonald committed the offenses beyond a reasonable doubt. Again, police found "tear offs" in the trash as well as in the kitchen. They found 6.65 grams of heroin in the kitchen, along with a coffee grinder with a white powdery residue in it, hydraulic presses, smaller "street-size baggies," playing cards, a pie pan, three hydraulic presses, and a "McDonald's spoon," which measures out approximately a half a gram of heroin. The detectives thoroughly explained how drug traffickers use each item, including the process of "cutting" and "stretching" heroin with other substances to make more profit from it.

{¶33} McDonald also raises several arguments about the gun that was found in the master bedroom of the home, but jury found McDonald not guilty of having a weapon while under disability and further found that he did not have a firearm on or about his person or under his control while committing the offenses. Thus, we need not address McDonald's arguments about the gun.

{¶34} Accordingly, we find that the state presented sufficient evidence that McDonald was trafficking heroin and that he used and possessed criminal tools for trafficking heroin. McDonald's first assignment of error is overruled.

**III.  Allied Offenses**

{¶35} In his second assignment of error, McDonald argues that the trial court erred when it did not merge all of his trafficking, possession, and criminal tools convictions because they were all allied offenses of similar import. We agree, and the state concedes that the trial court erred by not merging the offenses of trafficking heroin and possessing heroin, but we find no error with respect to McDonald's remaining arguments.

{¶36} An appellate court should apply a de novo standard of review in reviewing whether two offenses are allied offenses of similar import. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. McDonald failed to object to the imposition of multiple punishments. Nonetheless, the Ohio Supreme Court has held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845.

{¶37} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution, and the Ohio Constitution, Article I, Section 10, protect a defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *State v. Martello*, 97 Ohio St.3d 398, 2002-Ohio-6661, 780 N.E.2d 250, ¶ 7; *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). But the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Thus, the dispositive issue is "whether the

General Assembly intended to permit multiple punishments for the offenses at issue." *State v. Childs*, 88 Ohio St.3d 558, 561, 728 N.E.2d 379 (2000).

**{¶38}** In Ohio, this constitutional protection is codified in R.C. 2941.25. "R.C. 2941.25 essentially codified the judicial merger doctrine." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 23. The Ohio Supreme Court has explained that "[m]erger is 'the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.'" *Id.* at ¶ 23, fn. 3, quoting *Maumee v. Geiger*, 45 Ohio St.2d 238, 243-244, 344 N.E.2d 133 (1976).

**{¶39}** R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶40}** The Ohio Supreme Court set forth the test to determine if two offenses are allied offenses of similar import in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. It explained:

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can

govern every situation.

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶ 30-31.

**{¶41}** Whether trafficking and possession are allied offenses, however, was answered by the Ohio Supreme Court in *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181. At paragraph two of the syllabus, the court held that: "Trafficking in a controlled substance under R.C. 2925.03(A)(2) and possession of that same controlled substance under R.C. 2925.11(A) are allied offenses of similar import under R.C. 2941.25(A), because commission of the first offense necessarily results in commission of the second." Here, McDonald was convicted of trafficking heroin under R.C. 2925.03(A)(2) and possessing heroin under R.C. 2925.11(A). Accordingly, the trial court erred by not merging them.

**{¶42}** McDonald's remaining arguments, however, are without merit. He was also convicted of possessing alpha-PVP and criminal tools. These offenses are not allied offenses to each other or trafficking heroin or possessing heroin.

**{¶43}** When looking at McDonald's conduct in this case, it is clear that he did not commit these offenses with the same conduct. The officers found the alpha-PVP in McDonald's car when he was stopped by police just before they executed the search

warrant on his house. The heroin was found in the kitchen, where the "criminal tools" were also found. Possessing heroin is not the same conduct as possessing alpha-PVP. Possessing criminal tools is not the same conduct as trafficking or possessing drugs. Thus, besides trafficking and possessing heroin, which are allied offenses, the remaining offenses were committed separately and, thus, are not allied offenses of similar import.

{¶44} McDonald's second assignment of error is overruled in part and sustained in part.

{¶45} Judgment affirmed in part, reversed in part, and remanded for resentencing in order for the state to elect which allied offense to pursue for purposes of sentencing.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
TIM McCORMACK, P.J., CONCURS IN JUDGMENT
ONLY WITH SEPARATE OPINION

TIM McCORMACK, P.J., CONCURRING IN JUDGMENT ONLY:

**{¶46}** I agree with the majority's disposition of both of McDonald's assignments of error. I disagree, though, with the treatment of McDonald's argument that the case lacked sufficient evidence to find that he was the "real dealer."

**{¶47}** Specifically, I believe it is essentially unfounded for this court to determine that there was sufficient evidence for a reasonable factfinder to find that the other two persons living in the same house with McDonald, in close quarters, had nothing to do with trafficking heroin. It would be unfair and inaccurate for this court to state that there was sufficient evidence for a reasonable factfinder to find that the other two were involved to some degree in trafficking heroin. It is equally unfounded and inaccurate to find that they "had nothing to do with trafficking heroin." Further, such a conclusion is an unnecessary step in determining that there was sufficient evidence to convict McDonald. For that reason, I would have excluded the speculative discussion of McDonald's guilt as it related to the other household members.