[Cite as *State v. Olmstead*, 2018-Ohio-5301.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| DAVID E. BRANDON OLMSTEAD | : | Case No. 18-COA-016 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
Pleas, Case No. 17-CR-039


JUDGMENT:    Affirmed


DATE OF JUDGMENT:    December 26, 2018


APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Prosecuting Attorney
By: VICTOR R. PEREZ
Assistant Prosecutor
110 Cottage Street
Ashland, OH  44805

For Defendant-Appellant

RUTH R. FISCHBEIN-COHEN
3552 Severn Road  No. 613
Cleveland, OH  44118

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant David E. Brandon Olmstead appeals the January 12, 2018 judgment of conviction and sentence of the Court of Common Pleas of Ashland County, Ohio. Plaintiff-Appellee is the State of Ohio.

### Factual Background and Procedural History

{¶ 2}   On October 26, 2016, Ashland Police Detective Brian Evans received a phone call from confidential informant (CI) Andrew Lentz. Lentz advised Evans that he could buy marihuana from appellant. Evans met with Lentz, equipped Lentz with audio and video recording devices, and provided him with $50 buy money.

{¶ 3}   Lentz then placed a phone call to appellant to make arrangements. Evans recorded the call. Then, as Evans kept visual surveillance, Lentz proceeded to appellant's home as directed by appellant. Once there, Lentz gave appellant the buy money, and appellant stated he needed to go around the corner to another residence to acquire Lentz's marihuana. Lentz waited at appellant's home 10 or 15 minutes before appellant returned with one eighth ounce of marihuana. Appellant offered to smoke with Lentz, but Lentz declined and left. Lentz then returned to the Ashland Police Department and turned the marihuana and recording equipment over to Evans. The marihuana was not sent for testing, but had the appearance, consistency and odor of marihuana.

{¶ 4}   On March 17, 2017, Lentz again advised Evans the he could make a marihuana purchase from appellant. The same procedures were followed for this controlled buy, and Lentz was provided $70 in buy money. Appellant told Lentz to meet him in a Save-a-Lot parking lot in Ashland. When appellant arrived, he was a passenger in a gray Chrysler Town and Country van. Appellant got out of the van and into the

passenger seat of Lentz's car. Lentz handed appellant the buy money and appellant handed Lentz one quarter ounce of marihuana. Then, as directed by Evans, Lentz asked appellant if he could get "ice cream," which is a street term for methamphetamine. Appellant stated he could get it later. Lentz then returned to the Ashland Police Department and surrendered the marihuana and recording equipment to Evans. This marihuana was also not tested, but had the appearance, consistency, and odor of marihuana. This buy as well as the October 26, 2016 buy were successfully captured on video.

{¶ 5} On March 21, 2017, CI Bobbie Burdette texted Evans to tell him appellant had reached out to her stating he had methamphetamine to sell. Evans met with Burdette, equipped her with audio and video recording devices and provided her with $50 in buy money. Burdette than made arrangements with appellant who directed her to a home on Liberty Street. Evans had received complaints from neighbors of this residence about high, short term traffic in and out of the home indicative of drug trafficking.

{¶ 6} Evans dropped Burdette off close to the home and maintained visual surveillance as Burdette walked the remaining distance. He noticed the same gray van he had observed during Lentz's second buy in the driveway. He observed a white male exiting the van and noted a woman known to him as Jennifer Campbell driving.

{¶ 7} Burdette and the white male entered the home and Evans listened as Burdette and appellant discussed the buy. Appellant produced a silver box containing the methamphetamine and a scale and weighed out half a gram. Burdette handed appellant the $50. Appellant handed Burdette the methamphetamine, but then suspecting she was serving as a CI, appellant began pushing Burdette to smoke the meth with him to prove

she was not. Burdette eventually convinced appellant that she could not because she was on her way to see her children, but would be back later. Appellant took his drugs back and handed Burdette the buy money. Burdette returned to where Evans was waiting and returned the recording devices. The devices successfully captured appellant's offer to sell Burdette methamphetamine.

{¶ 8} Because Evans had observed the gray van at two different buys, as well as gathered other intelligence on the vehicle, he obtained a warrant to place a GPS tracking device on the van. The device was placed on March 23, 2017, and Evans began monitoring its movements.

{¶ 9} The same day, Evans noted the van traveling north toward Akron. This caught Evans' attention as he had gathered intelligence indicating appellant and his associates were acquiring methamphetamine from the Akron area. He watched as the van went through Summit County, into Portage County, made a short stop, and then returned to Ashland. As the van drew near an area where Evans had positioned himself on Route 250 East, he contacted Ashland Police Sergeant Craig Kiley to conduct a traffic stop of the van.

{¶ 10} When contacted by Evans, Kiley was on patrol with his canine partner Felo and his trainee Officer Kara Pearce. Kiley waited on Route 250 for the van to pass by. When it did, he pulled out behind it and a short time later initiated a traffic stop based on an equipment violation.

{¶ 11} Kiley found appellant behind the wheel, Jennifer Campbell in the passenger seat and Kayla Odom in the back driver's side seat. As he discussed the equipment violation with appellant, he noted appellant was breathing heavily, shaking, and would not

make eye contact. The women were also acting nervous. Odom wanted to do most of the talking and kept asking if she could go urinate. Based on Evans' GPS monitoring, all three lied about where they had been. Kiley advised appellant that he was going to run Felo around the car. When he did, Felo indicated on the driver's side rear passenger door where Odom was seated.

{¶ 12} The three were removed from the vehicle while it was searched. The search turned up 4 cell phones, 2 of which belonged to appellant, but nothing more. Due to Felo's alert, Kiley and Pearce followed up with questioning. Odom then admitted she had a bag of methamphetamine in her pants and surrendered the same. All three suspects were transported to the Ashland Police Station and a search warrant was obtained for appellant's residence.

{¶ 13} At appellant's residence, officers discovered the silver box seen on the video obtained during Burdette's buy. The box contained two scales, a ziplock bag containing marihuana, a bowl for smoking marihuana, a straw, rolling papers, a butane torch, and a spoon. The bag of suspected methamphetamine surrendered by Odom was sent to the Mansfield Police Laboratory where is was confirmed to be 7.58 grams of methamphetamine.

{¶ 14} As a result of these events, in April, 2017, the Ashland County Grand Jury returned an indictment charging appellant as follows:

Count 1 - Trafficking in marihuana in violation of R.C. 2925.03(A)(1) a felony of the fifth degree, alleged to have occurred on October 26, 2016

Count 2 – Trafficking in marihuana in violation of R.C. 2925.03(A)(1), a felony of the fifth degree, alleged to have occurred on March 17, 2017.

Count 3 – Aggravated trafficking in drugs (methamphetamine) in violation of R.C. 2925.03(A)(1), a felony of the fifth degree, alleged to have occurred on March 21, 2017.

Count 4 – Complicity to aggravated possession of drugs (methamphetamine equal of exceeding the bulk amount, but less than five times the bulk amount) in violation of R.C. 2923.03(A)(2) and R.C. 2925.11(A), a felony of the third degree, alleged to have occurred on March 23, 2017.

Count 5 – Complicity to aggravated trafficking in drugs (methamphetamine equal or exceeding the bulk amount, but less than five times the bulk amount) in violation of R.C. 2923.03(A)(2) and R.C. 2925.11(A), a felony of the third degree, alleged to have occurred on March 23, 2017.

Count 6 – Possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree, alleged to have occurred as a continuing course of conduct from October 26, 2016 and March 23, 2017.

{¶ 15} Appellant pled not guilty to the charges and elected to proceed to a jury trial. After hearing all the evidence and deliberating, the jury found appellant guilty as charged. The trial court delayed sentencing in order to obtain a pre-sentence investigation.

{¶ 16} Sentencing took place on January 8, 2018. Appellant was sentenced as follows:

Count 1, trafficking in marihuana, felony 5 – 11 months

Count 2, trafficking in marihuana, felony 5 – 11 months

Count 3, aggravated trafficking in drugs, felony 5 – 11 months

Count 4, complicity to aggravated possession of drugs, felony 4 – 9 months

Count 5, complicity to aggravated trafficking in drugs, felony 3 – 30 months

Count 6, possession of criminal tools, felony 5 – 11 months

{¶ 17} The trial court ordered appellant to serve counts 1, 2, and 6 concurrently with each other and counts 3, 4, and 5 consecutive to all other counts for an aggregate total of 61 months incarceration.

{¶ 18} Appellant now brings this appeal raising the following assignments of error:

I

{¶ 19} "THE COURT ERRED IN NOT MERGING THE COUNTS AT SENTENCING, SINCE THEY ARE ALLIED OFFENSES OF SIMILAR IMPORT."

II

{¶ 20} "THE TRIAL COURT ERRED BY SENTENCING BRANDON OLMSTEAD TO AN EXCESSIVE PRISON TERM OF SIXTY ONE MONTHS, DUE TO THE CONSECUTIVE NATURE OF THE SENTENCES."

I

{¶ 21} In his first assignment of error, appellant claims the trial court erred in not merging offenses for sentencing purposes in violation of R.C. 2941.25. We agree in part.

{¶ 22} We review an allied offenses argument de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 23} R.C. 2941.25 governs multiple counts and states the following:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 24} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶ 25} The Ruff court explained at ¶ 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶ 26} Appellant argues his criminal tools conviction should have merged with a trafficking or possession conviction. According to appellant, the cell phone and van were used to accomplish these crimes and thus should merge. He sets forth four alternative arguments as to how he believes his convictions should have merged as follows:

1) Count one, trafficking in marihuana and count six possession of criminal tools, or,

2) Count four, complicity to aggravated possession of methamphetamine, count five, complicity to aggravated trafficking in methamphetamine, and count six possession of criminal tools, or,

3) Count four, complicity to aggravated possession of methamphetamine and count six possession of criminal tools, or

4) Count five complicity to aggravated trafficking and count six possession of criminal tools.

{¶ 27} But possession of criminal tools is not an allied offense of either possession of a controlled substance or trafficking. In *State v. Dammons*, 8th Dist. Cuyahoga No. 94878, 2011-Ohio-2908, the Eighth District Court of Appeals determined that possession of criminal tools, in that matter a cell phone, and trafficking in drugs were not allied offenses. *Dammons* at ¶ 24. The court reasoned,

> Here, defendant was charged with possessing money and a cell phone "with purpose to use it criminally in the commission of a felony." Accordingly, it was not possible for defendant's possession of these items alone to result in a conviction for either drug trafficking or drug possession. Similarly, his possession of drugs did not establish a possession of criminal tools charge; despite his convictions for drug trafficking and drug possession. E.g., *State v. Byers*, Cuyahoga App. No. 94922, 2011-Ohio-342, ¶9 ("The ubiquitousness of cell phones is such that the mere possession of a cell phone is not ipso facto proof that it was used in drug trafficking.")

{¶ 28} Accord *State v. McDonald*, 8th Dist. Cuyahoga No. 105276, 2018-Ohio-484, ¶ 43 (possession of criminal tools is not the same conduct as trafficking or possessing drugs); *State v. Brownlee*, 8th Dist. No. 2018-Ohio-3308 ¶ 13 (The drugs Brownlee sold were not the basis for the possession of criminal tools counts) *State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 65, citing *State v. Dammons*, 8th Dist. Cuyahoga Nos. 94878, 2011-Ohio-2908, ¶ 24.

{¶ 29} The conduct underlying the possession of criminal tools was, therefore, separate from the conduct underlying the sale and possession of drugs for the purposes of the *Ruff* analysis and we reject appellant's arguments regarding possession of criminal tools.

{¶ 30} Appellant's first assignment of error is overruled.

## II

{¶ 31} In his second assignment of error, appellant makes three arguments. He first argues the trial court failed to comply with the mandates of R.C. 2929.14(C)(4) in imposing consecutive sentences. He next argues his sentences are unfair, disproportionate, and a strain on government resources. Finally, he contends his sentence constitutes cruel and unusual punishment. We disagree.

### Standard of Review

{¶ 32} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing,

only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

## Consecutive Sentences

{¶ 33} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, ¶ 37.

{¶ 34} R.C. 2929.14(C)(4) requires a sentencing court to engage in a three-step analysis and make certain findings before imposing consecutive sentences. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part

of any of the courses of conduct adequately reflects the seriousness

of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that

consecutive sentences are necessary to protect the public from

future crime by the offender.

{¶ 35} Without pinpointing any specific failing other than perceived unfairness and excessiveness, appellant complains the trial court failed to make the appropriate findings pursuant to R.C. 2929.14(C)(4). We have examined the sentencing transcript in this matter and note that the trial court meticulously complied with the requirements of R.C. 2929.14(C)(4) in imposing consecutive sentences.

{¶ 36} Having heard the evidence presented at trial, and further having a pre-sentence investigation report to rely upon, the trial court found appellant committed one or more of the offenses as a course of conduct, the harm of which was so great that no single commitment adequately reflected the nature of the crime and the severity. The court further found that consecutive sentences are necessary to protect the public from future crime, were not disproportionate to appellant's conduct and the danger he poses to the public. The trial court additionally found appellant's lengthy history of criminal conduct and failure to respond favorably to previously imposed community control sanctions warranted consecutive sentences. Transcript of Sentencing at 17-20. We therefore reject appellant's consecutive sentences complaint.

**Excessive, Disproportionate Sentence**

{¶ 37} Next, appellant argues the consecutive nature of his sentences renders his sentence excessive and disproportionate. We disagree.

{¶ 38} The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences. See *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, at paragraph seven of the syllabus. However, the trial court must comply with all applicable rules and statutes, including R.C. 2929.11 and R.C. 2929.12. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 37. A sentence is not contrary to law when it is within the authorized statutory range and the trial court states that it has considered the principles and purposes of sentencing and the seriousness and recidivism factors. *State v. Smith*, 2d Dist. Montgomery No. 26307, 2016-Ohio-1269, ¶ 25.

{¶ 39} Appellant does not dispute that his individual sentences are each within the statutory range. The record shows that the trial court properly considered the principles and purposes of sentencing contained in R.C. 2929.11 and the seriousness and recidivism factors contained in R.C. 2929.12, and sentenced appellant within the permissible range for each offense. Transcript of Sentencing 16-18.

{¶ 40} In light of the foregoing, we find the record supports the trial court's sentencing determination. Appellant's sentence is neither excessive nor disproportionate to his conduct.

### Cruel and Unusual Punishment

{¶ 41} Last, as to appellant's Eighth Amendment argument, appellant's sentence is not shocking to the sense of justice in the community considering appellant is a repeat offender and has failed to respond favorably to previously imposed sanctions. As noted above, the terms of this sentence are within the statutory range. "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." *McDougle v. Maxwell*, 1 Ohio St.2d 68, 69, 203 N.E.2d 334 (1964). "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." *Id.* "Cruel and unusual punishments are 'rare' and are limited to sanctions that under the circumstances would be shocking to any reasonable person." *State v. Koch*, 5th Dist. Knox No. 16-CA-16, 2016-Ohio-7926, ¶ 24, citing *State v. Blankenship*, 145 Ohio St.3d 221, 2015-Ohio-4624, 48 N.E.3d 526, ¶ 32. Appellant's sentence under these circumstances, and based on our review of the record, is lawful, reasonable, and appropriate.

{¶ 42} Appellant's second assignment of error is overruled.

{¶ 43} The judgement of the Ashland County Court of Common Pleas is affirmed.


By Wise, Earle, J.

Wise, John, P.J. and

Delaney, J. concur.


EEW/rw

[Cite as *State v. Olmstead*, 2018-Ohio-5301.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| DAVID E. BRANDON OLMSTEAD | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 18-COA-016 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment

of the Court of Common Pleas of Ashland County, Ohio is affirmed. Costs to appellant.