[Cite as *State v. Woods*, 2024-Ohio-5301.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 22CA3979 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| ANTHONY L. WOODS, | : | |
| | : | |
| Defendant-Appellant. | : | **RELEASED: 10/29/2024** |

APPEARANCES:

Gene Meadows, Jackson, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Assistant Scioto County Prosecutor, Portsmouth, Ohio, for appellee.

Wilkin, J.

{¶1} This is an appeal from a Scioto County Court of Common Pleas judgment entry of conviction of appellant, Anthony L. Woods ("Woods"), for (1) trafficking in cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(f), a first-degree felony; (2) possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(e), a first-degree felony; and (3) possessing criminal tools, in violation of R.C. 2923.24(A) and (C), a fifth-degree felony. Counts 1 and 2 were found to be allied offenses of similar import and merged for purposes of sentencing. The trial court then imposed an aggregate indefinite prison term of 11 to 16 years.

{¶2} On appeal, Woods asserts six assignments of error. For the reasons that follow, we overrule all six. Accordingly, we affirm the trial court's judgment of conviction.

BACKGROUND

{¶3} Late in the evening of August 23, 2020, while traveling on State Route 823 in Scioto County, Ohio, Ohio State Patrol Trooper Nicholas Lewis observed a vehicle in front of him with a North Carolina license plate that appeared to be a rental. Knowing that traffickers often utilize rental vehicles, he decided to follow the vehicle. While doing so, Trooper Lewis observed the vehicle cross the fog line, which marks the edge of the road, twice. The first time it crossed the fog line by one tire's width. The second time the car's tire crossed the fog line by two tire widths. Therefore, Trooper Lewis executed a traffic stop just before midnight.

{¶4} Trooper Lewis explained to the driver, who was subsequently identified as Woods, that the reason he was stopped was because he ran off the road. There were also two passengers in the vehicle. Trooper Lewis asked Woods to exit the vehicle and then asked him if he had any weapons or if he had been drinking or smoking. Woods responded no to both questions, and then told Trooper Lewis that they were "going on vacation." Trooper Lewis asked Woods where they were headed. Woods said they were going to West Virginia first, and then to Tennessee. Trooper Lewis asked Woods who he had with him, and Woods responded Meghan and his second response was unintelligible. Trooper Lewis told Woods that he was going to speak to his passengers.

{¶5} Trooper Lewis asked the front-seat passenger, subsequently identified as Meghan Wilson, for identification, but she had none. Consequently, Trooper Lewis asked her for a social security number. He also asked Wilson

where they were headed, and she said: "Myrtle Beach." The back-seat passenger also had no identification, so Trooper Lewis requested her social security number and her name. She provided Trooper Lewis her social security number and said her name was Taliya Edwards. Trooper Lewis testified not having identification is "usually a pretty good indicator that they got a warrant[,]" which is why he acquired their information.

{¶6} Trooper Lewis then returned to Woods and told him to have a seat in his vehicle while he (Trooper Lewis) checked Woods' and his passengers' information. At six minutes into the traffic stop, Trooper Lewis returned to his cruiser. Initially, Trooper Lewis requested Ohio State Trooper Ryan Day to assist him with this stop. He then relayed the information he had gathered from Woods and Wilson to his dispatcher in order to verify their identities and the validity of Woods' driver's license. Dispatch appeared to verify Meghan Wilson[1] and Woods' identities and that Woods' driver's license was valid. Trooper Lewis also learned that Wilson had an outstanding felony warrant. However, he was aware that Wilson's warrant needed to be confirmed before she could be taken to jail. Otherwise, she would need to be released.

{¶7} At approximately 9 minutes and 43 seconds into the stop, Trooper Lewis called in the second passenger's information for verification. Less than

---

[1] The audio from the dispatcher and the transcript of that audio references one of Woods' passengers as Meghan Connor. However, every other reference in the record references this passenger as Meghan Wilson. We are unable to determine why this disparity exists. However, for purposes of this case it has no effect, and we accept that the passenger's name is Meghan Wilson.

two minutes later, dispatch verified that the second passenger was Taliya Edwards.

{¶8} At approximately 12 minutes into the stop, Trooper Day arrived on the scene with his drug-detecting canine. Trooper Lewis exited his cruiser and informed Woods that Trooper Day was going to "run his dog around the car real fast." The canine sniffed the perimeter of the car until it reached the back cargo door where it began scratching, which indicated that it had detected the presence of drugs.

{¶9} Trooper Lewis informed Woods and his passengers that the canine "alerted to the car." He told them that they were not under arrest, but he needed to read them their *Miranda* rights. Trooper Lewis read all three their *Miranda* rights and did a pat-down search of each of them for weapons prior to placing them in the troopers' patrol vehicles.

{¶10} Because Wilson had an outstanding warrant, Trooper Lewis patted her down first. While conducting the search, Trooper Lewis felt an object in Wilson's pants, which she removed. It was a baggie that contained a powder that Trooper Lewis believed to be cocaine, so he seized it. Trooper Lewis then placed Wilson in the back seat of his cruiser. Trooper Lewis discovered no weapons or contraband when searching Edwards and Woods.

{¶11} The troopers then searched the vehicle for drugs, which took approximately 12 minutes. While the troopers were searching the vehicle, the

dispatcher can be heard on Trooper Lewis' radio confirming Wilson's warrant. The troopers found no contraband in the car.[2]

{¶12} Trooper Lewis decided not to cite Woods from driving over the fog line and released Woods and Edwards. However, he "transported Wilson to the Scioto County Jail where she was incarcerated for felony I possession of Cocaine and on the felony warrant." Trooper Lewis' report indicated that "[t]he seized contraband was shipped to the OSHP Crime Lab for analysis. This case will be forwarded to the Scioto County Prosecutor's Office for charges regarding Mr. Woods and Ms. Edwards once lab results are received."

{¶13} Subsequent to the traffic stop, the baggie of powder recovered from Wilson's pants tested positive for approximately 51 grams of cocaine.

{¶14} On January 12, 2021, a grand jury indicted Woods for (1) possession of cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(f), a first-degree felony; (2) trafficking in cocaine in violation of R.C. 2925.11(A) and (C)(4)(e), a first-degree felony; (3) tampering with evidence in violation of R.C. 2921.12(A)(1) and (B), a third-degree felony; and (4) possession of criminal tools in violation of R.C. 2923.24(A) and (C), a fifth-degree felony.

{¶15} Woods filed a motion to suppress all the evidence, as well as statements made by Woods, Wilson, and Edwards pertaining to the August 13, 2020 traffic stop. Woods alleged that there was no probable cause supporting a

---

[2] Video of the rear seats of the troopers' patrol vehicles appeared to show both Edwards and Wilson, while seated in the respective troopers' patrol vehicles, remove something from under their clothing and ingest it. However, no evidence was submitted at trial regarding the composition of what they ingested.

traffic stop because he did not commit a traffic violation. Because the stop was not justified, Woods maintained that the searches that occurred incident to the traffic stop were unconstitutional and none of the exceptions that permit a warrantless search applied. Therefore, he alleged, all the evidence acquired during the stop from the vehicle should be subject to the exclusionary rule. Woods argued that even if Trooper Lewis had probable cause to execute a traffic stop, the true purpose of the stop was not to issue a citation, but to search the vehicle without a search warrant in violation the Fourth Amendment.

{¶16} Woods also argued if searching Wilson was justified because of her outstanding warrant, it was limited to a pat-down search for weapons, not contraband. Therefore, he claimed, Trooper Lewis' search of Wilson went beyond the scope of the search permitted under the circumstances and the contraband recovered from her should be excluded from the evidence.

{¶17} In response, the State asserted that Trooper Lewis had probable cause for the traffic stop because he observed the vehicle Woods was driving cross the fog line on the edge of the road several times, which was a traffic violation.

{¶18} The State also argued that Woods had no standing to challenge the pat-down search of his passenger, Wilson. The State also maintained that once Wilson's outstanding warrant was confirmed, a pat-down search would have occurred and inevitably resulted in the discovery of the contraband. The State also claims that although Woods was subject to a pat-down search, Trooper

Lewis discovered no contraband, so it is unclear what Woods was challenging regarding the search performed on him.

{¶19} The State also maintained that the duration of the traffic stop was reasonable under the totality of the circumstances.  The State noted that Trooper Day arrived with a drug-sniffing canine within ten minutes of the start of the traffic stop and performed a sniff that alerted the canine of the existence of drugs in the car.  Trooper Lewis discovered that Woods had a valid license 8 minutes and 20 seconds after the traffic stop was initiated.  However, neither the return of Edwards information, nor confirmation of Wilson's warrant, were relayed to Trooper Lewis until after Trooper Day's canine alerted to Woods' vehicle.  The canine's alert for drugs effectively caused the traffic stop to be extended.

{¶20} Finally, the State addressed Woods' assertion that statements made by him and his passengers should be excluded.  The State pointed out that after Trooper Day's canine detected drugs on the vehicle Woods was driving, Trooper Lewis advised Woods, Wilson and Edwards of their *Miranda* rights.  Furthermore, they had no expectation of privacy while in the troopers' vehicles.

{¶21} Therefore, the State argued that any statements made by Woods, Wilson, or Edwards after the canine alerted to drugs in the vehicle were not subject to suppression.  Thus, the State moved the trial court to deny Woods' motion to suppress.

{¶22} On December 15, 2021, the court held a suppression hearing.  Trooper Lewis was the sole witness for the State.  He testified consistent with the facts set out supra.

{¶23} After the hearing, the trial court issued a judgment entry that determined Trooper Lewis had a reasonable articulable suspicion to stop Woods' vehicle for crossing the fog line several times.

{¶24} The court also found that Woods did not have standing to challenge the discovery of the cocaine because he "had no expectation of privacy in the pat-down search of a passenger in his vehicle[.]"  The court further found that Trooper Lewis had not gathered all the information necessary to resolve the traffic stop before Trooper Day's canine alerted to drugs giving the troopers probable cause to search Woods' vehicle for drugs.  Thus, it was reasonable to extend the stop beyond its original purpose.  Finally, the court found that statements made to Wilson, which occurred in the back seat of a patrol cruiser were not subject to an expectation of privacy so Fourth Amendment protections were not afforded to those statements.  Therefore, the trial court denied Woods' motion to suppress.

{¶25} On January 6, 2022, Woods filed a motion to continue the trial, which was set for January 10, 2022.  Woods claimed that Wilson, who was also charged with drug possession stemming from the traffic stop, sent a letter to the trial court in Woods' case that blamed Woods for the cocaine.  On January 11, 2022, the trial issued an entry continuing the trial to February 14, 2022.

{¶26} On February 14, 2022, prior to the start of trial, defense counsel indicated that he had one more issue.  He asserted that the State represented that it would subpoena Edwards and Wilson, and both would be conveyed to the jail so they would be available to testify in this case.  Defense counsel alleged

that only Edwards had been conveyed to jail. The State admitted that only

Edwards was conveyed because it was not going to call Wilson as a witness.

Defense counsel moved the trial for a continuance so he could subpoena Wilson.

The "basis [for the continuance] is that Ms. Wilson is the – supposed to be the

strength of their case." Defense counsel pointed out that Wilson had written a

letter to the court and the State that addressed the traffic stop. The court asked:

"Doesn't that letter place the blame on Mr. Woods?" The State responded: "It

does your honor." The court denied the defense's motion for a continuance.

{¶27} Later that morning after addressing some other matters, the trial

proceeded. The State offered testimony from five witnesses: Jeremy Bowles,

Troopers Lewis and Day, Lauren Ditto, and Woods' passenger, Edwards.

{¶28} Bowles was a manager at the car rental company that had rented

the SUV Woods was driving at the time of the traffic stop. He testified that the

vehicle was rented to Renalda Woods, but Woods was listed as a second

authorized driver.

{¶29} During Trooper Lewis' testimony, the State played video and audio

captured from cameras in his cruiser. There was a front-facing camera that

captured what was happening in front of his cruiser, and a rear-facing camera

showed what was happening in the back-seat of his cruiser. For various

reasons, such as the quality of the recording and radio traffic, the audio from

inside the cruiser ranges from being difficult to hear to being impossible to hear.[3]

---

[3] The jurors were provided listening aid to help them understand the audio from the video feed recording.

Therefore, the State periodically pauses the video/audio, and asks Trooper Lewis to narrate what was said.

{¶30} After reviewing the traffic stop and the canine alert to the presence of drugs in Woods' vehicle, the State directed the jury's attention to Woods and Wilson who had been placed in Trooper Lewis' cruiser while Troopers Lewis and Day searched Woods' vehicle for contraband. Shortly after the jury saw Woods being placed in the backseat of Trooper Lewis' cruiser with Wilson, the State paused the video and Trooper Lewis' testified that Wilson was telling Woods that she had an outstanding warrant. He then stated that Wilson told Woods, "They got the bag." Defense counsel objected, but the court overruled the objection without elaboration.

{¶31} The video was resumed and Wilson and Woods continue to talk. While they are talking, despite being handcuffed, Wilson several times reached under her shirt, appeared to pull something out and consume it. She also appeared to spit out something into Woods' hand. Woods then appeared to conceal that object in his shoe. The State stopped the video and asks Trooper Lewis to tell the jury what just happened. His explanation mirrors what was just seen. Trooper Lewis testified that he thought Wilson removed drugs from under her shirt, but also acknowledged that Wilson never admitted she was consuming any drugs. A piece of foil was recovered from Woods' shoe, but Trooper Lewis was unable to detect any drug residue, so he threw it away.

{¶32} The prosecutor asked Trooper Lewis if "there was any conversation between [Wilson and Woods] about what was taken off her person in the front of

the cruiser?" Trooper Lewis responded: "At one point, at one point, I don't think again you'll be able to hear it very clear in this – this copy of the video she makes a statement – she says. " 'what is it powder?' " And he says yea that's what it is." Defense counsel again objected. After a sidebar discussion, the judge instructed the jury:

> you have heard some evidence offered by way of this video and the – and Trooper Lewis' testifying as to what he heard in that video that includes statements from a Codefendant, Ms. Wilson. Her statements for this trial are only offered for a limited purpose. They're offered to put into contact – context the responses and actions of this Defendant. And they're also *not offered for the truth* of what she says, but to explain the Trooper's actions on the evening in question. They should not be considered for the truth of what she said, but merely as to explain the actions of and statements of the Defendant and the actions of the Trooper. (Emphasis added.)

The remainder of Trooper Lewis' testimony and the video of Wilson and Woods was unremarkable.

**{¶33}** The State's next witness, Lauren Ditto, testified that she was a forensic chemist employed by Ohio's Bureau of Criminal Investigation. Ditto tested the powder from the baggie that Trooper Lewis recovered from Wilson. She told the jury that the powder tested positive for cocaine.

**{¶34}** The State's last witness, Taliya Edwards, was one of the female passengers in Woods' vehicle on the night of the traffic stop. Edwards testified that she met Woods the day of the traffic stop because he was looking for people to go to Tennessee with him to party. She said she was Woods' "escort."

**{¶35}** Edwards claimed that she was aware that Woods had fentanyl the day of their trip. However, she testified that she was not aware that there was

cocaine in the car when they left Columbus. She maintained that she was first aware there was cocaine in the car after the traffic stop occurred. Edwards claimed that after the stop, Woods threw fentanyl and "weed" out his window. She also testified that the 51 grams of cocaine that was recovered from Wilson's pants belonged to Woods. Edwards claimed that Woods threw the baggie of cocaine in Wilson's lap and he told her to "stuff it." In other words, Woods told Wilson to hide the cocaine.

{¶36} The jury found Woods guilty of possession of cocaine, trafficking in cocaine, and possession of criminal tools, but not guilty of tampering with evidence.

{¶37} In sentencing Woods, the court merged Count 2 with Count 1 and sentenced Woods to a 10 to 15-year-prison term and a $20,000.00 fine for trafficking in cocaine. The court sentenced Woods to 12 months in prison on Count 4, possession of criminal tools. The two sentences were to be served consecutively for an indefinite sentence of a minimum of 11 years to a maximum of 16 years in prison. It is this conviction that Woods appeals.

ASSIGNMENTS OF ERROR

I.      THE DEFENDANT-APPELLANT WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. DUE TO TRIAL COUNSEL'S FAILURE TO ARGUE TO SUPPRESS THE STATEMENT MADE BY THE DEFENDANT-APPELLANT AFTER THE TRAFFIC STOP.

II.     THE DEFENDANT-APPELLANT WAS DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE TRIAL COUNSEL'S FAILURE TO ISSUE A SUBPOENA TO A WITNESS.

III.     THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
         DEFENDANT-APPELLANT BY FAILING TO MERGE COUNT 1
         AND COUNT 4 FOR SENTENCING PURPOSES.

IV.      THE VERDICT AND CONVICTION ARE AGAINST THE
         MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL
         BECAUSE THE PLAINTIFF-APPELLEE FAILED TO PROVE THE
         DEFENDANT-APPELLANT HAD POSSESSION OF THE ILLEGAL
         SUBSTANCES.

V.       THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
         DEFENDANT WHEN THE TRIAL COURT IMPOSED A FINE
         WITHOUT CONSIDERING THE PRESENT AND FUTURE
         ABILITY OF THE DEFENDANT TO PAY SAID FINE.

VI.      THE TRIAL COURT ERRED TO THE PREJUDICE OF THE
         DEFENDANT-APPELLANT IN VIOLATION OF ARTICLE I,
         SECTION 10 OF THE OHIO CONSTITUTION THAT
         GUARANTEES THE DEFENDANT-APPELLANT THE RIGHT TO
         CONFRONT AND CROSS EXAMINE WITNESSES USED
         AGAINST THE DEFENDANT-APPELLANT.

## I. First Assignment of Error

**{¶38}** Shortly after the traffic stop was initiated, Trooper Lewis asked Woods several questions, including where he and his passengers were headed. Woods responded they were headed to West Virginia and then to Tennessee. However, Wilson told Trooper Lewis that they were headed to Myrtle Beach. Woods claims that his trial counsel was ineffective for failing to seek suppression of Woods' response to the Trooper's destination question. Woods claims "[t]here is little question that [he] was not free to leave the scene, meaning he was detained. Based upon the questions asked regarding his destination, it is clear that Trooper Lewis was conducting an investigation that reached further than the traffic stop." Woods contends that his destination had nothing to do with driving over the fog line, which was why he was stopped. Because he was detained

beyond the traffic stop, Woods contends that he should have been read his *Miranda* rights.

**{¶39}** Woods maintains that his trial counsel's failure to suppress Woods' statements to Trooper Lewis regarding his destination was prejudicial to him (Woods). Had his answer been suppressed, then all "the evidence that was collected as a result of the statements would have been excluded, it would have hindered the State of Ohio to continue with the prosecution and increased [Woods'] chance of acquittal." For these reasons, Woods claims his trial counsel was ineffective.

**{¶40}** In response, the State claims that "there was simply no basis upon which to include mention of any statements made by [Woods] in his motion to suppress in his case." The State maintains that during a traffic stop, "[i]nquiring about possession of weapons, whether [Woods] had been drinking or smoking, and his destination of travel were all proper questions to ascertain the situation and determine officer safety." The State claims that these questions do not implicate *Miranda* protections. Therefore, the State argues that there was no reasonable basis for trial counsel to seek suppression of Woods' responses to these questions as posed to him by Trooper Lewis. Accordingly, Woods' trial counsel was not ineffective for failing to seek suppression of these statements by Woods. Thus, Woods' first assignment of error should be overruled.

A. Law

1. Ineffective Assistance of Counsel

**{¶41}** "To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial." *State v. Platt*, 2024-Ohio-1330, ¶ 89 (4th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's "deficient performance result[s] in prejudice, [only if] there is a reasonable probability that but for counsel's errors, the outcome of the proceeding would have been different." *State v. Day*, 2019-Ohio-4819, ¶ 89, citing *Strickland* at 687. " 'Failure to satisfy either part of the test [i.e., show deficient performance or prejudice] is fatal to the claim.' " *Platt* at ¶ 88, quoting *State v. Jones*, 2008-Ohio-968, ¶ 14 (4th Dist.). "Therefore, if one element is dispositive, a court need not analyze both." *Id.*, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶42}** "In Ohio a properly licensed attorney is presumed competent." *State v. Ruble*, 2017-Ohio-7259, ¶ 47 (4th Dist.), citing *State v. Gondor*, 2006-Ohio-6679, ¶ 62. Therefore, when reviewing an ineffective-assistance-of-counsel claim, "we must indulge in 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.*, quoting *Strickland* at 697.

**{¶43}** To establish ineffective assistance of counsel for failing to seek suppression of an appellant's statements, the appellant "must prove that there was a basis to suppress[.]" *State v. Whitehead*, 2022-Ohio-479, ¶ 40 (4th Dist.),

quoting *State v. Brown*, 2007-Ohio-4837, ¶ 65, citing *State v. Adams*, 2004-Ohio-

5845, ¶ 35.  " ' "Where the record contains no evidence which would justify the

filing of a motion to suppress, the appellant has not met his burden of proving

that his attorney violated an essential duty by failing to file the motion." ' "  *Id.*,

quoting *State v. Drummond*, 2006-Ohio-5084, ¶ 208, quoting *State v. Gibson*, 69

Ohio App.2d 91, 95 (8th Dist.1980).

2. A Traffic Stop

**{¶44}** "A traffic stop initiated by a law enforcement officer constitutes a

seizure within the meaning of the Fourth Amendment."  *State v. Farrow*, 2023-

Ohio-682, ¶ 13 (4th Dist.).  Therefore, "a traffic stop must comply with the Fourth

Amendment's general reasonableness requirement.  An officer's decision to stop

a vehicle is reasonable when the officer has probable cause or reasonable

suspicion to believe that the driver has committed, or is committing a crime,

including a minor traffic violation."  *Id.*, citing  *Whren v. United States,* 517 U.S.

806, 809-810 (1996).  "In general, an investigative stop may last no longer than

necessary to accomplish the initial goal of the stop[.]"  *State v. Netter*, 2024-Ohio-

1068,  ¶18 (4th Dist.).  This Court has recognized that

> [l]aw enforcement tasks generally associated with traffic
> infractions include (1) determining whether to issue a traffic
> citation, (2) checking the driver's license, (3) determining the
> existence of outstanding warrants, (4) inspecting the vehicle's
> registration, and (5) examining proof of insurance. "These checks
> serve the same objective as enforcement of the traffic code:
> ensuring that vehicles on the road are operated safely and
> responsibly."

*Id.* at ¶ 19, quoting *Farrow* at ¶ 14, citing *Rodriguez v. United States*, 575 U.S.
348, 355.

**{¶45}** " 'An officer's inquiries into matters unrelated to the justification for

the traffic stop, this Court has made plain, do not convert the encounter into

something other than a lawful seizure, so long as those inquiries do not

measurably extend the duration of the stop.' " *State v. Dunbar*, 2024-Ohio-1460,

¶ 32 (4th Dist.), quoting *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

This Court has also held that

> [g]enerally, questions about travel plans are ordinary inquiries incident to a traffic stop. *See* citing *United States v. Dion*, 859 F.3d 114, 125 (1st Cir. 2017)("[O]ur case law allows an officer carrying out a routine traffic stop * * * to inquire into the driver's itinerary."); *United States v. Bowman*, 660 F.3d 338, 343 (8th Cir. 2011)(tasks related to a traffic violation include "inquiring about the occupants' destination, route, and purpose"); *United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004)(absence of authorized driving, inconsistent explanation regarding reason for trip and passenger's fake ID justified continued detention); *United States v. Williams*, 271 F.3d 1262, 1267 (10th [sic.] Cir. 2001)("[W]e have repeatedly held (as have other circuits) that questions relating to a driver's travel plans ordinarily fall within the scope of a traffic stop.")

*Id.* (Ellipses sic.)

**{¶46}** "The fact that * * * questions [-asking the driver's identity or his or

her destination-] were asked and answered did not convert an investigative stop

and detention for a traffic violation into a situation where [the motorist] could be

considered 'in custody' for purposes of *Miranda*." *State v. Meadows*, 2022-Ohio-

287, ¶ 34 (4th Dist.).  As recognized by the Second District Court of Appeals,

" ' "[s]ince 'detention, not questioning, is the evil' at issue, it has been held that,

so long as the traffic stop is valid, 'any questioning which occurs during the

detention, even if unrelated to the scope of the detention, is valid so long as the

questioning does not improperly extend the duration of the detention.' " ' "
(Emphasis omitted.) *State v. Lawson*, 2009-Ohio-62, ¶ 39 (2d Dist.), quoting
*State v. Morgan*, 2002 WL 63196, *2 (2d Dist. Jan. 18, 2002), quoting *State v.
Chagaris*, 107 Ohio App.3d 551, 556-557 (9th Dist. 1995), quoting *State v.
Wright*, 1995 WL 404964, *4 (9th Dist. June 28, 1995).

**{¶47}** "A traffic stop becomes 'unlawful if it is prolonged beyond the time
reasonably required to complete th[e] mission" of issuing a ticket for the
violation.' " *State v. Jones*, 2022-Ohio-561, ¶ 22 (4th Dist.), quoting *Rodriguez*,
575 U.S. at 350, quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). "After a
reasonable time for the purpose of the original traffic stop to elapse, an officer
must then have ' "a reasonable articulable suspicion of illegal activity to continue
the detention." ' " *State v. Kincaid*, 2024-Ohio-2668, ¶ 17 (4th Dist.), quoting
*Jones* at ¶ 22, quoting *State v. Ramos*, 2003-Ohio-6535, ¶ 13 (2d Dist.).

### B.  Analysis

**{¶48}** Woods claims that "[b]ased upon the questions asked regarding his
destination, it is clear that Trooper Lewis was conducting an investigation that
reached further than the traffic stop[,]" requiring that he be given his *Miranda*
rights.  Approximately four minutes after executing the traffic stop, Trooper Lewis
asked Woods to step out of his vehicle to examine his license.  He asked Woods
if he had any weapons and whether he had been drinking or smoking.  Woods
responded no to the questions, and then volunteered he and his passengers
were "going on vacation."  In response, Trooper Lewis asked Woods where they
were headed.  Woods said they were going to West Virginia first and then to

Tennessee. Trooper Lewis' destination question was permissible as being incident to the traffic stop. *See Johnson*, 555 United States at 333 (2009); *Dunbar*, 2024-Ohio-1460, at ¶ 32 (4th Dist.); *Dion*, 859 F.3d at 125 (1st Cir. 2017); *Bowman*, 660 F.3d at 343 (8th Cir. 2011). Thus, the destination question, which was asked and answered within minutes of the traffic stop and before Trooper Lewis even checked the validity of Woods' driver's license, did not convert the stop into a situation where Woods would be considered to be in " 'custody' for purposes of *Miranda*[.]" *See Meadows*, 2022-Ohio-287, at ¶ 34.

{¶49} Aside from asserting that Trooper Lewis' destination question was improper because it was not related to the traffic stop and that Trooper Lewis was conducting some type of investigation, Woods offers no argument why the traffic stop was unconstitutional because its duration went beyond the time necessary to complete the traffic stop. As the Second District Court has recognized, "*detention*, not questioning, is the evil" that makes a traffic stop unconstitutional. *Lawson*, 2009-Ohio-62, at ¶ 34. But Woods fails to quantify or make clear how Trooper Lewis' destination question caused the traffic stop to be unreasonable in its duration, and it is not this Court's role to construct that argument for him. *See State v. Bodyke*, 2010-Ohio-2424, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part). "[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983).

**{¶50}** For the aforementioned reasons, we find that Woods has failed to allege, let alone prove, there was a basis to suppress his response to Trooper Lewis' destination question. *See Whitehead*, 2022-Ohio-479, at ¶ 40 (4th Dist.). Therefore, we find that Woods' argument that his counsel was ineffective for failing to seek suppression of his response to Trooper Lewis' destination question lacks merit. Accordingly, we overrule Woods' first assignment of error.

## II. Second Assignment of Error

**{¶51}** In his second assignment of error, Woods asserts that his trial counsel was ineffective for failing to subpoena Meghan Wilson to testify as a witness at his trial.

**{¶52}** Woods claims his passenger, Wilson, was also tried on a drug charge that stemmed from the traffic stop. He argues that in her case she sent a letter to the judge that claimed Woods "attempted to put the drugs in her pants" while "the Trooper was stopping the car." Woods maintains calling Wilson as a witness was critical because it would have allowed him the opportunity to test her assertion that the cocaine belonged to him. Woods argues that Wilson's credibility in that regard was for the jury to decide. Woods claims that but for counsel's failure to subpoena Wilson, a reasonable probability existed that the result of the trial would have been different.

**{¶53}** In response, the State claims that Woods' argument ignores that Edwards testified at Woods' trial that the cocaine recovered from Wilson belonged to Woods. The State argues that Woods' claim - that had his counsel subpoenaed Wilson the outcome of the trial would have been different - is pure

speculation.  Because Woods has failed to establish that Wilson's testimony would have changed the outcome of the trial, the State maintains his trial counsel was not ineffective for failing to subpoena her.

### A. Standard of Review

**{¶54}** Woods again asserts that his trial counsel was ineffective. Therefore, we apply the same standard of review as set forth above, i.e., to be ineffective, counsel's representation must be deficient, or counsel's action or inactions must result in prejudice, or both.  *Platt*, 2024-Ohio-1330, at ¶ 89 (4th Dist.).  For purposes of an ineffective assistance of counsel claim for failing to subpoena a witness, to show prejudice the appellant must identify "what testimony [that] witness[ ] might have given or how it would have assisted the defense."  *State v. Doyle*, 2006-Ohio-4072, ¶ 23 (4th Dist.); *State v. Champlin*, 1981 WL 4353, * 1 (11th Dist. Dec. 31, 1981) ("In the instant cause, appellant alleged ineffective assistance of counsel in that counsel failed to subpoena and call several witnesses, but he did not indicate what those witnesses would have testified to that would have been helpful to his defense.").  There is no prejudice when the appellant offers "no evidence as to how such witness would have testified if subpoenaed."  *City of Alliance v. Cagey*, 2008-Ohio-3653, ¶ 31 (5th Dist.).  Further, "[t]he failure to subpoena witnesses is not prejudicial if the testimony of those witnesses simply would have been corroborative." *Middletown v. Allen*, 63 Ohio App. 3d 443, 448 (12th Dist. 1989), citing *State v. Warden*, 33 Ohio App.3d 87 (5th Dist. 1986).

### B. Analysis

**{¶55}** The few statements Wilson made during the traffic stop, while seated with Woods in the backseat of Trooper Lewis' cruiser, suggests that the cocaine belonged to Woods, as did the letter that she sent to the court. Thus, presumably Wilson's testimony would have corroborated Edward's testimony, which asserted at trial that the cocaine belonged to Woods.

**{¶56}** Woods merely argues that "the jury never had the opportunity to hear [Wilson's] testimony and determine her credibility." However, he never even hinted at "what testimony [Wilson] might have given or how it would have assisted the defense." *Doyle*, 2006-Ohio-4072 at ¶ 23 (4th Dist.).

**{¶57}** Therefore, even if Woods' trial counsel was deficient in not subpoenaing Wilson as a witness, there is no evidence that her absence as a witness prejudiced Woods. Therefore, we find that Woods' assertion that his trial counsel was ineffective for failing to subpoena Wilson lacks merit. Accordingly, we overrule Woods' second assignment of error.

**{¶58}** An inability to show prejudice alone is fatal to an ineffective assistance of counsel claim. Therefore, we find that Woods' trial counsel was not ineffective, and overrule his second assignment of error.

### III. Third Assignment of Error

**{¶59}** In his third assignment of error, Woods asserts that the trial court erred to his prejudice by failing to merge his convictions under Count 1, Trafficking in Cocaine, and Count 4, Possession of Criminal Tools, for sentencing purposes.

{¶60} Woods argues that the applicable merger test is found in *State v. Ruff*, 2015-Ohio-995. Under *Ruff*, Woods argues that if any of the following are true, then the offenses do not merge: (1) The offenses were dissimilar in import or significance, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus.

{¶61} Woods argues that the harm from the trafficking and possession of criminal tools was similar in their import, the offenses were not committed separately, and the offenses were not committed with a separate animus. Because the answer to all three questions set forth in *Ruff are* in the negative, Woods argues that his offenses must merge and he can only be sentenced for one of them.

{¶62} In response, the State first asserts that Woods' trial counsel "agreed that Counts 1 and 2 merged but Count 4 did not." Therefore, we must apply a plain error standard of review.

{¶63} The State agrees that *Ruff* provides the proper test to determine whether Counts 1 and 4 merge, but argues that they should not merge. The State first maintains that the harm caused by possession of a rental vehicle differs from the harm caused by trafficking in cocaine. The State also asserts that driving and possessing a rental vehicle can occur separately from trafficking in cocaine. Because at least two of the questions in *Ruff* can be answered affirmatively, the State argues that the trial court did not abuse its discretion by failing to merge Counts 1 and 4.

A. Law

**{¶64}** "The Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution affords protections against the imposition of multiple criminal

punishments for the same offense."  *State v. Rogers*, 2015-Ohio-2459, ¶ 16,

citing *Hudson v. United States*, 522 U.S. 93, 99 (1997).  The prohibition against

multiple punishments is codified in R.C. 2941.25, which provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶65}** The Supreme Court of Ohio elaborated that

> when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff*, 2015-Ohio-995, at ¶ 31.

**{¶66}** "Two or more offenses of dissimilar import exist within the meaning

of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving

separate victims or if the harm that results from each offense is separate and

identifiable."  *Id.* at paragraph two of the syllabus.  "Offenses are committed

separately within the meaning of R.C. 2941.25(B) if one offense is completed

before the other offense occurs." *State v. Fisher*, 2023-Ohio-2088, ¶ 21 (6th

Dist.), citing *State v. Turner*, 2011-Ohio-6714, ¶ 24 (2d Dist.).

> "Animus" is defined for purposes of R.C. 2941.25(B) as " 'purpose' or 'more properly, immediate motive.'" "If the defendant acted with the same purpose, intent, or motive in both instances, the animus is identical for both offenses." Animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. (Citations omitted.)

*State v. Fisher*, 2014-Ohio-4257, ¶ 17 (4th Dist.).

{¶67} "The defendant bears the burden of establishing his entitlement to

the protection, provided by R.C. 2941.25, against multiple punishments for a

single criminal act." *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987).

{¶68} "[W]hen deciding whether to merge multiple offenses at sentencing

pursuant to R.C. 2941.25, a court must review the entire record, including

arguments and information presented at the sentencing hearing, to determine

whether the offenses were committed separately or with a separate animus."

*State v. Washington*, 2013-Ohio-4982, ¶ 24.

{¶69} We review de novo the trial court's merger determination of allied

offenses. *State v. Williams*, 2012-Ohio-5699, ¶ 1. Thus, as an appellate court,

we " 'independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard.' " *Id.* at ¶ 26,

quoting *State v. Burnside,* 2003-Ohio-5372, ¶ 8. Moreover, Because Woods' trial

counsel did not object to the trial court's failure to merge Counts 1 and 4, we

review only for plain error, but " 'the imposition of multiple punishments for allied

offenses of similar import amounts to plain error.' " *State v. Jarrett*, 2020-Ohio-

393, ¶ 12 (2d Dist.), quoting *State v. Rivera,* 2019-Ohio-3296, ¶ 3, fn 2 (2d Dist.),

quoting *State v. Estes*, 2014-Ohio-767, ¶ 11 (12th Dist.).

### B. Analysis

{**¶70**} In the matter at hand, Woods was convicted of trafficking in cocaine

in violation of R.C. 2925.03, which provides:

> (A) No person shall knowingly do any of the following:
>
> * * *
>
> (2) Prepare for shipment, ship, transport, deliver, prepare for
> distribution, or distribute a controlled substance or a controlled
> substance analog, when the offender knows or has reasonable
> cause to believe that the controlled substance or a controlled
> substance analog is intended for sale or resale by the offender or
> another person.

{**¶71**} Woods was also convicted of possession of criminal tools in

violation of R.C. 2923.24, which provides: "(A) No person shall possess or have

under the person's control any substance, device, instrument, or article, with

purpose to use it criminally."

{**¶72**} Ohio courts have recognized that drug offenses and possession of

criminal tools are not allied offenses of similar import.  For example, in *State v.*

*Jarrett*, the appellant was charged with trafficking cocaine and possession of

criminal tools (a 2009 Ford Mustang).  2020-Ohio-393, ¶ 8 (2d Dist.).  The

indictment alleged " 'that the [Mustang] involved in the offense was intended for

use in the commission of a felony: to wit: Trafficking in Cocaine * * *.' "  (Brackets

and ellipses sic.)  *Id.* at ¶ 14.  The Court concluded that the cocaine "found in

[appellant's] possession [was] not the basis of his criminal tools count involving

the Mustang."  *Id.*  Therefore, the court found that appellant's "conduct underlying

the possession of criminal tools was separate from the conduct underlying the trafficking cocaine offense pursuant to *Ruff*." *Id.* Thus, appellant was not entitled to have his trafficking and criminal tools convictions merge. *Id.*

{¶73} In *State v. Olmstead*, the Seventh District Court of Appeals addressed whether convictions for possession of cocaine and criminal tools (a cell phone and money) were allied offenses of similar import. 2018-Ohio-5301 (7th Dist.). As part of its analysis, the court in *Olmstead* quoted the Eighth District Court of Appeals:

> "Here, defendant was charged with possessing money and a cell phone "with purpose to use it criminally in the commission of a felony." Accordingly, it was not possible for defendant's possession of these items alone to result in a conviction for either drug trafficking or drug possession. Similarly, his possession of drugs did not establish a possession of criminal tools charge; despite his convictions for drug trafficking and drug possession. E.g., *State v. Byers*, Cuyahoga App. No. 94922, 2011-Ohio-342, ¶ 9 ("The ubiquitousness of cell phones is such that the mere possession of a cell phone is not ipso facto proof that it was used in drug trafficking.")"

*Id.* at ¶ 27, quoting *State v. Dammons*, 2011-Ohio-2908 (8th Dist.).

{¶74} Applying that logic, the court in *Olmstead* "conclude[d] that the conduct underlying the possession of criminal tools was separate from the conduct underlying the possession of cocaine for the purposes of the *Ruff* analysis[.]" *Id.* at ¶ 29. Therefore, the Court overruled the appellant's argument, which meant that the trial court did not err in sentencing him for both offenses. *Id.*

**{¶75}** Similar to *Jarrett* and *Olmstead*, we find that Woods' conduct underlying the possession of criminal tools (the vehicle) was separate from his conduct underlying the trafficking of cocaine. Woods' actions associated with acquiring the vehicle were separate from the actions associated with his trafficking conviction i.e., "prepar[ing] for shipment, ship[ping], transport[ing], deliver[ing], prepar[ing] for distribution, and/or distribut[ing]" the cocaine. R.C. 2925.03(A)(2). Because one of the *Ruff* factors has been answered affirmatively, the offenses of trafficking in cocaine and criminal tools are not allied offenses of similar import. Consequently, trafficking in cocaine and possession of criminal tools do not merge for purposes of sentencing.

**{¶76}** Therefore, we find that the trial court did not commit plain error in failing to merge Counts 1 and 4 and sentencing Woods for both offenses. Accordingly, we overrule Woods' third assignment of error.

### VI. Fourth Assignment of Error

**{¶77}** In his fourth assignment of error, Woods asserts that his trafficking conviction is against the manifest weight of the evidence because the State failed to prove that he had possession of an illegal substance.

**{¶78}** Woods maintains that he was searched before he was placed in Trooper Lewis' cruiser and no contraband was discovered. He asserts the trooper did not find any contraband until Wilson gave the cocaine to the trooper. There was no testimony, aside from Edwards, that Woods was conscious of the contraband, or that he had the ability to exercise dominion and control over the contraband. The contraband was hidden in Wilson's pants. Therefore, Woods

maintains his conviction is not supported by the evidence so it should be reversed.

**{¶79}** In response, the State claims that Woods' conviction for possession of cocaine is supported by the manifest weight of the evidence.  The State maintains that Edwards testified that she was paid in money and drugs to accompany Woods and that he tossed the baggie full of cocaine into Wilson's lap and told her to "stuff it."  Therefore, the State argues that Woods' conviction for possession of cocaine is not against the manifest weight of the evidence because there is some competent credible evidence that he had knowledge and dominion and control over the cocaine before he tossed it to Wilson.

A. Law

1. Manifest Weight of the Evidence

**{¶80}** In a manifest-weight-of-the-evidence analysis, "the appellate court 'sits as a thirteenth juror' and assesses whether it disagrees with the factfinder's resolution of the conflicting testimony."  *State v. Griffin*, 2013-Ohio-3309, ¶ 31 (4th Dist.), quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52 (1997).  "Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue over the other; it relates to persuasion and involves the effect of the evidence in inducing belief." *Fox v. Positron Energy Res., Inc.*, 2017-Ohio-8700, ¶ 10 (4th Dist.), citing *Paulus v. Beck Energy Corp.*, 2017-Ohio-5716, ¶ 16 (7th Dist.).

**{¶81}** " 'In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the

evidence and all reasonable inferences, [and] consider the credibility of witnesses[.]' " [Brackets sic.]  *State v. Ratliff*, 2024-Ohio-61, ¶ 48 (4th Dist.), quoting *State v. Evans*, 2023-Ohio-1879, ¶ 26 (4th Dist.), citing *Thompkins*, 78 Ohio St.3d at 387 (1997).  A reviewing court must " 'determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that reversal of the conviction is necessary.' "  *Id.* at ¶ 48, quoting *Evans* at ¶ 26.  "To satisfy this test, the state must introduce substantial evidence on all the elements of an offense, so that the jury can find guilt beyond a reasonable doubt."  *State v. Guice*, 2024-Ohio-1914, ¶ 80 (4th Dist.), citing *State v. Eskridge*, 38 Ohio St.3d 56 (1988), syllabus; *State v. Harvey*, 2022-Ohio-2319, ¶ 24 (4th Dist.).  "Because a trier of fact sees and hears the witnesses, appellate courts will also afford substantial deference to a trier of fact's credibility determinations."  *Id.*, citing State *v. Schroeder*, 2019-Ohio-4136, ¶ 61 (4th Dist.).

{¶82} Ultimately, " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.' "  *State v. Newcomb*, 2024-Ohio-805, ¶ 19 (4th Dist.), quoting *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

### 2. Trafficking in Cocaine

{¶83} The State charged Woods with trafficking in cocaine in violation of R.C. 2925.03(A)(2) and (C)(4)(f).  In pertinent part, R.C. 2925.03 provides:

(A) No person shall knowingly do any of the following:

* * *

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

* * *

(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:

* * *

(f) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine and regardless of whether the offense was committed in the vicinity of a school, in the vicinity of a juvenile, or in the vicinity of a substance addiction services provider or a recovering addict, trafficking in cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term a first degree felony mandatory prison term.

### 3. Possession

**{¶84}** Woods was convicted of possession of and trafficking in cocaine.[4] Each offense requires he possesses the cocaine. " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.10(K).

---

[4] Although the trial court merged Woods' drug trafficking and possession convictions for purposes of sentencing, that did not obviate that Woods was found guilty of both offenses and both offenses required that Woods possessed the cocaine.

Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 175 (1989). " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.), quoting *State v. Fry*, 2004-Ohio-5747, ¶ 39 (4th Dist.). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Smith*, 2020-Ohio-5316, ¶ 36, citing *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982).

B. Analysis

{¶85} Edwards testified that both she and Wilson were taking drugs during the car trip that ended with the traffic stop. She was taking fentanyl and Wilson was taking methamphetamine and fentanyl. However, Edwards testified that she was unaware that there was cocaine in the car until the traffic stop occurred. She testified that during the traffic stop, Woods "threw the cocaine on [Wilson's] lap and told her to stuff it. That's when I realized that there was cocaine in the car." Edwards testified that Woods wanted Wilson to hide the cocaine in her crotch. She further stated that the cocaine belonged to Woods.

{¶86} Based on Edwards' testimony, we believe the State presented some competent, credible evidence that Woods possessed and owned the cocaine as evidenced by him having the baggie of cocaine before throwing it to Wilson and telling her to hide it during the traffic stop. Therefore, we conclude the jury did not clearly lose its way or create a manifest miscarriage of justice in finding

Woods possessed the cocaine that was discovered during the traffic stop. Accordingly, we overrule Woods' fourth assignment of error.

## V. Fifth Assignment of Error

{¶87} The trial court fined Woods $20,000. Relying on *State v. Mock*, 2010-Ohio-2747, ¶ 59 (7th Dist.), Woods claims that "[b]efore imposing a financial sanction under R.C. 2929.18, the court must consider the offender's present and future ability to pay the amount of the sanction of fine." Woods claims that the trial court failed to make any present or future findings regarding his ability to pay the fine. Therefore, we should "set [the fine] aside[.]"

{¶88} In response, the State asserts that regarding the $20,000 fine, the trial court explicitly found that Woods had "the present and future ability to pay this financial sanction." Therefore, this Court should overrule Woods' fifth assignment of error.

## A. Law

{¶89} Woods never objected to the court's alleged failure to consider his ability to pay the fine. Therefore, we review his fifth assignment of error under the plain error standard of review wherein "the defendant bears the burden of 'showing that but for a plain or obvious error, the outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.' " *State v. West*, 2022-Ohio-1556, ¶ 22, quoting, *State v. Quarterman*, 2014-Ohio-4034, ¶ 16.

{¶90} R.C. 2929.19 (B)(5) states: "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of

the Revised Code, the court shall consider the offender's present and future

ability to pay the amount of the sanction or fine."

> R.C. 2929.19(B)(5) imposes a duty on the trial court to 'consider the offender's present and future ability to pay' before imposing any financial sanctions under R.C. 2929.18." (Citation omitted.) *State v. Philbeck*, 2d Dist. Montgomery Nos. 26466, 2015-Ohio-3375, 2015 WL 4992348, ¶ 27. "[T]he statute establishes no particular factors for the court to take into consideration, nor is a hearing necessary before making this determination." (Citation omitted.) *Id.* "The record should, however, contain 'evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution.' " *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57 (2d Dist.), quoting *State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346, 2004 WL 2260101, ¶ 17.

*State v. Dean*, 2018-Ohio-1317, ¶ 71 (2d Dist.).

Even though R.C. 2929.19(B)(5) requires that a trial court " 'shall consider the

offender's present and future ability to pay the amount of the sanction or fine,

before imposing a restitution order, it does not set forth express factors that must

be taken into consideration or findings regarding the offender's ability to pay that

must be made on the record.' " *State v. Anderson*, 2016-Ohio-7252, ¶ 37 (4th

Dist.), quoting *State v. Martin,* 140 Ohio App.3d 326, 338 (4th Dist. 2000).  " ' "

[A]s long as the record contains some indication that the trial court considered

the offender's present and future ability to pay the sanction or fine, the court's

imposition of a financial sanction is not contrary to law." ' " *State v. Stewart*,

2024-Ohio-1640, ¶ 32 (4th Dist.), quoting *State v. Brock*, 2021-Ohio-1279, ¶ 32

(4th Dist.), quoting *State v. Lykins*, 2017-Ohio-9390, ¶ 1 (4th Dist.).

{¶91} In reviewing a trial court's imposition of costs and financial

sanctions, as part of a felony sentence, we apply the standard set forth in R.C.

2953.08(G)(2)(b) to determine whether the imposition of costs and financial sanctions is clearly and convincingly contrary to law. *State v. Marcum*, 2016-Ohio-1002, ¶ 1; *State v. Stewart*, 2024-Ohio-1640, ¶ 30-34 (4th Dist.). "[A]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23. A fine is not clearly and convincingly contrary to law if the trial court " 'considered the defendant's present and future ability to pay.' " *Stewart* at ¶ 33. However, there is no requirement that a court make any "findings" in this regard. *Id.* at ¶ 34, quoting *State v. Delgadillo-Banuelos*, 2019-Ohio-4174, ¶ 35 (10th Dist.).

### B. Analysis

{¶92} Woods maintains that the trial court erred by not making any *findings* that he had a present or future ability to pay the fine. R.C. 2929.19 (B)(5) does not require a court to make "findings" regarding a defendant's ability to pay to pay a fine. Rather, a court is required only to "consider" the defendant's ability to pay.

{¶93} Examining the transcript for the sentencing hearing, even though it was not necessary to make such an explicit finding, after imposing the $20,000 fine, the court stated: "I am going to find that you have the present and future ability to pay this financial sanction." Thus, the court did consider Woods' ability to pay the fine. Therefore, the trial court's imposition of the $20,000 fine did not

cause Woods' sentence to be clearly and convincingly contrary to law or result in plain error. Accordingly, we overrule Woods' fifth assignment of error.

## VI. Sixth Assignment of Error

{¶94} In his sixth assignment of error, Woods claims that the trial court erred in denying him the right to confront and cross-examine witnesses who testified against him in violation of Article I, Section 10 of the Ohio Constitution. During the trial, the State played a video of Wilson while she was sitting in the backseat of Trooper Lewis' cruiser with Woods. Woods claims that during a conversation they had, Wilson made some comments that incriminated him. Woods claims that her comments should have been subject to cross-examination. The failure of the trial court to strike Wilson's statements in this regard prejudiced Woods and violated his right to confront witnesses.

{¶95} In response, the State first asserts that Woods could have subpoenaed Wilson but did not.

{¶96} The State also complains that Woods does not identify the purported incriminating statements making it impossible for the State to respond. Woods' assignment of error should be overruled on this omission alone.

{¶97} The State further asserts that the trial court did not err by allowing Wilson's statements from the video camera in the trooper's cruiser. The trial court overruled Woods' objection to allowing Wilson's statements to be heard and gave the jury a limiting instruction that her statements were offered for the limited purpose of putting Woods' actions and responses in context and were not for the truth of the matter asserted.

**{¶98}** The State claims Wilson's statements "were offered only to explain the connect of the trooper's actions and the limiting instruction was proper." Quoting *State v. Ricks*, 2013-Ohio-3712, ¶ 27, the State claims that:

> in order for testimony offered to explain police conduct to be admissible as nonhearsay, the conduct to be explained should be relevant, equivocal, and contemporaneous with the statements; the probative value of statements must not be substantially outweighed by the danger of unfair prejudice; and the statements cannot connect the accused with the crime charged.

**{¶99}** During the video, Wilson states that she swallowed drugs and a bag, but spit a piece of foil into Woods' hand. The State claims that these statements were offered to explain why Trooper Lewis searched Woods' shoe, where he located the foil. Woods was found not guilty of tampering with evidence. Therefore, the State argues, even if admitting these statements was erroneous, it was not prejudicial and does not merit reversal.

**{¶100}** The State maintains that given the testimony of Edwards, Wilson's statements regarding the possession and trafficking convictions were merely "superfluous." There is no reasonable probability that Wilson's complained of statements contributed to Woods' convictions for these offenses.

**{¶101}** Considering the totality of the circumstances and evidence submitted, even if it were erroneous to permit Wilson's recorded statements, it was not prejudicial. Therefore, Woods sixth assignment of error should be overruled.

A Law

1. The Right to Confront Witnesses

**{¶102}** "[T]he right of confrontation in Article I, Section 10 of the Ohio Constitution provides no greater right of confrontation than the Sixth Amendment." *State v. Smith*, 2016-Ohio-5062, ¶ 75 (4th Dist.), citing *State v. Arnold,* 2010-Ohio-2742, ¶ 12. Therefore, the Sixth Amendment, and the case law construing it, are controlling herein.

**{¶103}** The Sixth Amendment to the United States Constitution guarantees defendants the right to confront the witnesses against them and includes the right to cross-examination. *State v. Shepard*, 2024-Ohio-1408, ¶ 24 (4th Dist.), citing *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Alaska* at 316. The United States Supreme Court has recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U.S. 474, 496 (1959).

**{¶104}** "[P]ursuant to the Confrontation Clause of the Sixth Amendment to the United States Constitution, '[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.' " (Brackets sic.) *State v. Ricks*, 2013-Ohio-3712, ¶17, quoting *Crawford v. Washington,* 541 U.S. 36, 59 (2004). However, "the Confrontation Clause " 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' " *Id.* at ¶ 18, quoting *Crawford* at 59, fn. 9, citing *Tennessee v. Street,* 471 U.S. 409 (1985). For example, in *Ricks* the Court recognized that an out-of-

court statement that is admitted to explain police conduct is not hearsay. *Id.* at ¶

20-24. The Court in *Ricks* explained that

> in order for testimony offered to explain police conduct to be
> admissible as nonhearsay, the conduct to be explained should be
> relevant, equivocal, and contemporaneous with the statements;
> the probative value of statements must not be substantially
> outweighed by the danger of unfair prejudice; and the statements
> cannot connect the accused with the crime charged.

*Id.* at ¶ 27.

## 2. Harmless Constitutional Error

**{¶105}** The Supreme Court has held that a constitutional error may be

harmless if it is harmless beyond a reasonable doubt. *Chapman v. California*,

386 U.S. 18, 23 (1967). This includes errors in evaluating an appellant's Sixth

Amendment right to confrontation of witnesses. *Delaware v. Van Arsdall,* 475

U.S. 673, 684 (1986). The Court in *Van Arsdall* explained:

> The correct inquiry [to determine whether denying a
> defendant from cross examining a witness is harmless] is whether,
> assuming that the damaging potential of the cross-examination
> were fully realized, a reviewing court might nonetheless say that
> the error was harmless beyond a reasonable doubt. Whether such
> an error is harmless in a particular case depends upon a host of
> factors, all readily accessible to reviewing courts. These factors
> include the importance of the witness' testimony in the
> prosecution's case, whether the testimony was cumulative, the
> presence or absence of evidence corroborating or contradicting
> the testimony of the witness on material points, the extent of
> cross-examination otherwise permitted, and, of course, the overall
> strength of the prosecution's case.

## B. Analysis

**{¶106}** While seated with Woods in the back seat of Trooper Lewis'

cruiser, Wilson can be seen in the video appearing to periodically remove and

consume something from under her shirt, as well as later spitting something into Woods' hand. But there is no intelligible discussion between the two explaining her actions. We agree with the State, these actions did not implicate Woods' confrontation rights because the trial court properly limited the jury's consideration of them. The trial court instructed the jury that it could consider Wilson's actions only to explain why Trooper Lewis searched Woods' shoe, which was permissible under *Ricks* (Holds that hearsay limited to explaining the actions of law enforcement does not implicate a defendant's rights under the Confrontation Clause, absent unfair prejudice). 2013-Ohio-3712, ¶ 27.

{¶107} To the extent that Woods' act of accepting and hiding the foil in his shoe would have triggered his right to cross-examine Wilson, we find the error harmless. Woods' attempt to hide the foil could arguably have supported the tampering with evidence charge. However, the jury found Woods not guilty of tampering with evidence. Therefore, it is axiomatic that any violation of the Confrontation Clause for purposes of the tampering with evidence charge was harmless.

{¶108} Finally, we examine Trooper Lewis' testimony: (1) that Wilson told Woods "they got the bag[,]" and (2) that Wilson asked Woods "what is it powder?" and he answered: "yea that's what it is." Both of these statements are hearsay and go to the truth of the matter asserted, i.e., they show that the cocaine belonged to Woods. Therefore, because this testimony connects him to the crimes of possession and trafficking in cocaine, Woods should have been

able to cross-examine Wilson regarding these statements. However, for the reasons below, we find this error was harmless beyond a reasonable doubt.

{¶109} In determining whether a Confrontation Clause violation is harmless, *Van Arsdall* directs courts to consider, among other factors, "whether the testimony was *cumulative*, [as well as] the presence or absence of evidence *corroborating* or contradicting the testimony of the witness on material points[.]" (Emphasis added.) 475 U.S. at 684 (1986). At Woods' trial, Edwards testified that when Woods picked her up from Wilson's house the day of the traffic stop, he gave fentanyl to her and Wilson, although it turned out to be fake. She also stated that during the traffic stop, "[b]efore [Trooper Lewis] can make it up [Woods] throws out weed and he throws out fentanyl." Edwards further asserted that "by the time you all left we pulled back and we went to go search for the other drugs that [Woods] threw out his window before [the trooper] came up." Edwards maintained that the 51 grams of cocaine recovered from Wilson during the traffic stop belonged to Woods. She testified that during the traffic stop, Woods tossed the cocaine to Wilson and told her to "stuff it." Thus, Edwards testimony implicated Woods as possessing drugs, including, the cocaine that was found in Wilson's pants.

{¶110} Had Wilson's hearsay statements been the only evidence showing that the cocaine belonged to Woods, or had her testimony indicated that the cocaine belonged to someone other than Woods, then not permitting Woods to cross-examine Wilson would have been prejudicial to him. But those are not the facts in this case. Rather, Wilson's statements are cumulative to and corroborate

Edwards' testimony that the cocaine belonged to Woods.  And Woods fails to make any argument why cross-examination of Wilson would have revealed anything different.  Therefore, we find that Woods' inability to cross-examine Wilson was harmless beyond a reasonable doubt under the *Van Arsdall* test. Accordingly, we overrule Woods' sixth assignment of error.

CONCLUSION

{¶111} Having overruled all six of Woods' assignments of error, we affirm the trial court's judgment of conviction.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and the appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the SCIOTO COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Hess, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Kristy S. Wilkin, Judge

## **NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**